UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JESSICA TINGEY, WILLIAM E. DUDGEON,
and TRAVONEY HARRIS **On Behalf of Themselves
and All Other Michigan Residents Similarly Situated**

       Plaintiffs,

                                    Case No.
v.                                    Hon.
                                    Magistrate Judge

                                    **PROPOSED CLASS ACTION**


TRANSWORLD SYSTEMS, INC. and
WELTMAN, WEINBERG & REIS, CO., LPA,
aka WELTMAN, WEINBERG & REIS CO. OF
MICHIGAN and SHERMETTA LAW GROUP, PLLC

       Defendants.

_____/

**PROPOSED CLASS ACTION COMPLAINT AND JURY DEMAND**

      NOW COMES Plaintiffs**, JESSICA TINGEY, WILLIAM E. DUDGEON and**

**TRAVONEY HARRIS** (hereinafter "Plaintiffs" "Plaintiff" or "Tingey" or "Dudgeon" or

"Harris") by and through counsel, The Law Offices of Brian Parker, PC and bring this Proposed

Class Action against the above listed Defendants, **TRANSWORLD SYSTEMS, INC. ("TSI"**

**or Defendant), WELTMAN, WEINBERG & REIS, Co. LPA aka WELTMAN,**

**WEINBERG & REIS, CO., OF MICHIGAN ("Weltman" or Defendant Weltman"),**

**SHERMETTA LAW GROUP, PLLC ("Shermeta")** on the grounds set forth herein:

      I.   **PRELIMINARY STATEMENT OUTLINING DEFENDANTS' FILING OF
           LAWSUITS WITHOUT THE PROPER OWNERSHIP OR CHAIN OF TITLE
           OF OWNERSHIP OF DEBTS AND WITHOUT STANDING TO SUE**

1.

Plaintiff brings this action for damages and injunctive relief based upon the Defendants'

violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* and The

Regulation of Collection Practices Act (RCPA), and codified at MCL 445.251 et seq. and the

Michigan Occupation Code ("MOC"), MCL 339.901 et seq;

2.

## II.     STATEWIDE ALLEGATIONS AGAINST THE DEFENDANTS

As part of a STATEWIDE scheme in all 83 Counties of the State of Michigan and as

shown in the template State Court National Collegiate Student Loan Trusts ("NCSLT")

collection lawsuits at **Exhibit 1 (Tingey), Exhibit 2 (Harris) and Exhibit 3, (Dudgeon)**, the

Defendants are mutually engaged in the filing of false collection lawsuits for false amounts

against Michigan resident debtors with false ownership claims with no proof of ownership of the

debts they are suing upon *where*:

- Defendant Weltman and Shermeta for themselves and NCSLT and Transworld
  Systems, Inc. ("TSI") file the same formulaic (exhibits and lack of proof evidence
  of this allegation) and computer template complaint and attaching exhibits that lack
  both meaningful attorney file review and any proof of ownership of the debt by TSI
  and NCSLT (*Exhibit 1-3*); and

- Beyond a template complaint and some loan documents rarely applicable to both
  the debtor they are suing or the jurisdiction they file lawsuits in, there is no specific
  proof or necessary evidence attached to the State Collection Lawsuits that shows
  the SPECIFIC DEBOTR Account is owned by NCLST or anyone else attached to
  the lawsuit against the Michigan debtor; and

- The Defendants Misrepresent the Amount owed on the debt and provide no proof the amount or debt is owed to Defendants or NCSLT; and

- There is no proof that the State Collection lawsuits that Shermeta and Weltman file for NCSLT are based upon debts NCSLT owns, indeed as part of the Trust Securitization process, NCSLT is required to sell its rights, interest and title in the student loan debts to another entity, US BANK, NA the Indenture Trustee in the year of the of the name of the entity for example, National Collegiate Student Loan Trust 2007-2 would, according to "Paragraph XII Assignments"

### ARTICLE XII
### ASSIGNMENT

The Seller (***National Collegiate Funding***) hereby assigns its entire right, title and interest as purchaser under this Sale Agreement and each Student Loan Purchase Agreement to the Purchaser as of the date hereof and acknowledges that the Purchaser (***NCSLT 2007-2***) will ***assign the same, together with the right, title and interest*** of the Purchaser hereunder, to the Indenture Trustee under the Indenture.

So that every lawsuit filed in Michigan is filed by a National Collegiate Student Loan Trust entity that has no ownership in the debt it is suing upon and NCSLT is not the Real Party in Interest; and

- Defendants are engaged in a State-wide scheme to file similar State Collection lawsuits without the necessary proof of ownership and meaningful attorney review prior to signing and filing of the lawsuits which seek false amounts with no card proof of the right of NCSLT to sue Michigan residents; and

- In these Michigan State collection cases, there is never proof or evidence at the beginning of the case or at the end sufficient to support the ownership of the debt by the Plaintiff or to take the case to trial by any NCSLT entity; and

- Defendant TSI and their law firm Defendants know they cannot make out a prima facie case in ANY of these State Collection Lawsuits and cannot demonstrate the existence of any ownership of the SPECIFIC DEBT sued upon at the State level and Defendants know they lack standing to sue while seeking to use a collection lawsuit to obtain a settlement or default against Michigan Consumers; and

- The loan paperwork between the Lender and State Debtor state under the terms of the contract NCSLT sues upon and is saying was breached requires the case be either brought in OHIO law:

I  I understand that you are located in OHIO and that this Credit Agreement will be entered into in the same state  CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF OHIO, WITHOUT REGARD TO CONFLICT OF LAW RULES

- The Defendants are filing these NCSLT collection lawsuits *without the means of ever being able to obtain sufficient proof and the rights, interest and title to bring these lawsuits* in the State of Michigan with the sole purpose of seeking Defaults or quick settlements and with no proof or intention to bring the case to trial against the State of Michigan Defendant; and

- Defendants violated the applicable subsections of the FDCPA, MRCPA, and/or MOC via their conduct *and intent* of creating and filing these computer template lawsuit (all three are the same but for the numbers) with the purpose of oppressing, harassing, and abusing Plaintiffs into paying alleged debts to Defendants which the Defendants have no lawful right to collect.

3.

Defendants TSI seek false, or deceptive lawsuits to state and local courts through their

*State Attorney Network* of Defendant law firms like Defendant Shermeta and Weltman in order to obtain thousands of default judgments or settlements against consumers for phantom debts or debts NCSLT does not have standing to pursue.   In fact, most if not all of the judgments procured by NCSLT are default judgments, as few consumers in similar debt collection cases take the necessary steps via litigation to adequately defend themselves.1

4.

A State Court's power to issue a final judgment such as a default judgment may only be invoked upon a foundation of admissible evidence.   In most consumer debt-collection cases here, the underlying documentation concerning a purported debt has been generated by the TSI and is false and therefore hearsay under state law throughout the nation.

5.

Defendants are aware that significant inaccuracies may exist in the sale files of debts that NCSLT and TSI pursues through its attorney network with Defendant Shermeta and

---

1 https://www.ftc.gov/sites/default/files/documents/reports/federal-trade-commission-bureau-consumer-protectionstaff-report-repairing-broken-system-protecting/debtcollectionreport.pdf See, e.g., Abrams, Tr. V at 18 (well over 60%); Buckles, Tr. I at 24 (85%); Domestic Policy Subcommittee Minority Staff Report of the House Oversight and Government Reform Committee (Domestic Policy Minority Staff) Comment, 3-4 (80% in New York City and Massachusetts, citing Urban Justice Center, Debt Weight: The Consumer Credit Crisis in New York City and its Impact on the Working Poor, 1 (Oct. 2007), available at www.urbanjustice.org/cdp); Evans, Tr. V at 19 (70-80%); Fisher, Tr. V at 193 (70%); Groves, Tr. V at 22-3 (80- 90%); Lipman, Tr. I at 21-2 (85-90%); MFY Legal Services (MFY) Comment at 1-2 (90% of New York City debtors fail to answer in suits filed by seven largest debt collection law firms, citing MFY's 2008 report, Justice Disserved: A Preliminary Analysis of the Exceptionally Low Appearance Rate by Defendants in Lawsuits Filed in the Civil Court of the City of New York, available at http://www.mfy.org/Justice_Disserved.pdf); Moiseev, Tr. I at 21 (85-90%); Moore, Tr. IV at 18 (80% based on California Creditors' Bar Association informal survey); Neighborhood Economic Development Advocacy Project (NEDAP) Comment at 2 (75% default rate in New York City and 90% rate of failure to answer collection suit); Redmond, Tr. V at 22 (percentage is "certainly very high"); Surh, Tr. IV at 55 (95%); The Legal Aid Society, Neighborhood Economic Development Advocacy Project, MFY Legal Services, and Urban Justice Center – Community Development Project, Debt Deception: How Debt Buyers Abuse the Legal System to Prey on Lower-Income New Yorkers (May 2010), 8, available at

http://www.nedap.org/pressroom/documents/DEBT_DECEPTION_FINAL_WEB.pdf (hereinafter Debt Deception) (finding among 336 collection cases brought by the 26 most litigious debt buyers in New York City that 81% of cases initially resulted in default judgments for the debt buyers); but see also Moore, Tr. IV at 151 (95% of cases that go to judgment are by default)

Defendant Weltman to collect false amounts plus attorney fees, interest, and costs.2

6.

Without sufficient account-level documentation- or access to anyone with personal knowledge of a consumer's account- the Defendants know ***they cannot make out a prima facie case demonstrating the existence of any of its' NCSLT state collection lawsuit debts to have standing or at any time in the judicial collection process through trial***.

7.

Defendants goal is to obtain a default judgment through their Attorney Network of attorneys on computer template and deficient pleadings that show no definitive legal proof of standing and are otherwise insufficient as proof to take to trial.

8.

The Defendants' lawsuits lack any proof or contractual basis to give the Defendants standing or to find Plaintiffs liable for a debt TSI or NCSLT never intends to prove it owns or is able to show paperwork that the NCSLT debt is owed by the consumer in the collection lawsuit in state court (*see Exhibits 1-3).*

9.

Defendants violate Federal and Michigan law by deceiving Michigan residents into paying a debt or being defaulted in State courts where NCSLT lacks ownership and/or proof of ownership to sue on a debt through collection lawsuits with material and false representations in violation of § 1692e, § 1692e (10), § 1692e (2)(A), § 1692e (5), § 1692e (9), §1692f, § 1692d, MCL 339.915(a), 339.915(b), 339.915(d), 339.915(e), 339.915(f), 339.915(n), 339.915(q),

---

2 https://www.nclc.org/images/pdf/debt_collection/Debt-Collection-Facts-2016.pdf See, e.g., Consumer Financial Protection Bureau, The Consumer Credit Card Market (Dec. 2015); Federal Trade Commission, The Structure and Practices of the Debt Buying Industry (Jan. 2013).

339.915a(d) 339.915(f), MCLA 445.252(n), MCLA 445.252(e), MCLA 445.252(b), MCLA 445.252(d), MCLA 445.252(f) and MCLA 445.252(q).3

10.

Plaintiffs have suffered damages in that they must now defend themselves at great cost and expense or face a default from fraudulently-initiated lawsuits and risk damage to their credit history and reputation by Defendants whose false collection attempts through bogus lawsuits that lack standing and proof to hold anyone liable harm and thusly are entitled to a recovery against the Defendants under the FDCPA, MOC and RCPA (*Exhibit 5-7 Plaintiffs' Affidavits).*

### III.   GENERAL PLEADINGS

11.

Defendant TSI is a Servicer, Debt collector and Custodian of Records of private student loan debts for a vast network of Education Trusts titled either National Collegiate Trust, National Collegiate Master Student Loan Trust, or National Collegiate Student Loan Trust (NCSLT) that employs collection law firms through their State of Michigan Attorney Network to file collection lawsuits for the NCSLT -2004-1 through NCSLT 2007-3 Trusts below:

---

3 https://www.nclc.org/images/pdf/debt_collection/Debt-Collection-Facts-2016.pdf See, e.g., Mary Spector, "Debts,
Defaults, and Details: Exploring the Impact of Debt Collection Litigation on Consumers and Courts," 6 Va. L. & Bus. Rev. 257, 288 (2011) (77% default rate in Dallas County); Claudia Wilner and Nasoan Sheftel-Gomes, Neighborhood Economic Development Advocacy Project, Debt Deception: How Debt Buyers Abuse the Legal System to Prey on Low Income New Yorkers (2010) (81% default rates in New York City); Federal Trade Commission, Repairing a Broken System 7 (July 2010) ("panelists from throughout the country estimated that sixty percent to ninety-five percent of consumer debt collection lawsuits result in defaults, with most panelists indicating that the rate in their jurisdictions was close to ninety percent") and 7 n.18 (collecting studies on default rates)

**National Collegiate Trust**

Date: 11/3/14

RE:

| | |
|---|---|
| National Collegiate Master Student Loan Trust-I | National Collegiate Student Loan Trust-2003-1 |
| National Collegiate Student Loan Trust-2004-1 | National Collegiate Student Loan Trust-2004-2 |
| National Collegiate Student Loan Trust-2005-1 | National Collegiate Student Loan Trust-2005-2 |
| National Collegiate Student Loan Trust-2005-3 | National Collegiate Student Loan Trust-2006-1 |
| National Collegiate Student Loan Trust-2006-2 | National Collegiate Student Loan Trust-2006-3 |
| National Collegiate Student Loan Trust-2006-4 | National Collegiate Student Loan Trust-2007-1 |
| National Collegiate Student Loan Trust-2007-2 | National Collegiate Student Loan Trust-2007-3 |
| National Collegiate Student Loan Trust-2007-4 | |

To whom it may concern:

U.S. Bank, as Special Servicer for the above referenced Trust(s), confirms that Transworld Systems Inc. is its Subservicer, authorized to file Proofs of Claim (POC) on behalf of the above Trust(s) with respect of student loans owned by the Trust(s). Transworld Systems Inc. is also the dedicated record custodian with respect to all student loan accounts owned by the Trust(s) and is fully authorized to execute affidavits regarding account documents, verify responses to discovery and provide testimony on behalf of the Trust(s).

Any questions regarding the above referenced processes should be directed to Transworld Systems Inc. at 1-800-209-9161

Sincerely,

U.S. Bank National Association
As Special Servicer to the National Collegiate Student Loan Trust(s)

By: _____
Brian C Tri
Vice President
Title

**Please See Exhibit 4.**

12.

At **Exhibit 1-3** and in violation of the FDCPA, MOC and the RCPA, Defendants are collecting on defaulted student loans through State Collection lawsuits at the direction of Defendant TSI even though there is no proof or chain of title from the Original Lender of the student loans to the State Plaintiff, NCSLT. In short, at the time the lawsuits are filed by Defendants, NCSLT has no standing or any minimum proof necessary to take the case to completion or trial and Weltman is filing the cases for TSI without the necessary and meaningful attorney involvement in the file.

13.

Because the assignment occurred through the contract, absent evidence of the contract showing the specific assignment from the Original Lender to the NCSLT Plaintiff, the State and local court pleading containing NCSLT's bare assertion of the assignment is insufficient to establish factual support for plaintiff's claim that it acquired defendant's account by assignment. See *Unifund CCR Partners v. Nishawn Riley*, Michigan Court of Appeals Case No. 287599, February 18, 2010. Defendants lack any proof of the assignment of the SPECIFIC Crawford debt.

14.

In August of 2011, Weltman, Weinberg & Reis' very own attorney, Jeffrey K. Bearss, authored an Article titled "Michigan Courts Increase Requirements of Proof of Assignment in Debt Buyer cases" for the law firm that represents NCSLT. The article examined a recent Michigan Court of Appeals ruling under the case name, ***Brownbark II, LP v. Bay Area Floorcovering & Design Inc. et al***, Michigan Court of Appeals Case No. 296660, May 31, 2011.

15.

Mr. Bearss wrote in the article that, "The Court of Appeals stated that Michigan's statute of frauds still requires that an assignment of debt be in writing and signed with an authorized signature by the party to be charged with the agreement, contract, or promise." Mr. Bearss concluded the article with some advice for Weltman's clients: "For our debt buyer clients, there is now an increased level of proof of the assignment. The general contract, or batch assignment agreement, is no longer sufficient. A specific assignment, or affidavit supporting a specific assignment, should be supplied that refers to the specific account number. It should also be signed and notarized by the original creditor."   Weltman has now taken this article down from its website. **Please see Mr. Bearss' s Article at Exhibit 8**.

16.

The Court of Appeals created the *Bassett Rule* in *Midland Funding, LLC v Michael Bassett*, No. 338404, **April 24, 2018** and held that Midland had failed to prove by a preponderance of the evidence that Midland owned Mr. Basset's debt and reversed the trial court with a holding that, "Although the chain of title documents admitted affirmatively show Midland Funding purchased *a debt pool* from Asset Acceptance, LLC, which was originally owned by FIA Card Services, N.A., the trial court's ***finding that defendant's individual debt was included in that debt pool is clearly erroneous*.**"   ***Bassett at Page 4 of the Opinion at Exhibit 9*.**

.

17.

In the widespread practice of submitting general "Pool Supplements" and "Sale Agreements" as "proof," TSI and its law firms offer paperwork in discovery that creates the illusion that the specific NCSLT Trust that is suing the debtor has a right to sue on the debt but lacks any chain of assignment or ownership from the original lender to Plaintiff NCSLT. **Please see Exhibit 10 which the Deposit and Sale agreement between National Collegiate Funding, LLC and NCSLT 2007-2 showing an example of every agreement's mandate for NCSLT to transfer any interest or ownership in the debt to the Indentured Trustee**.

**ARTICLE XII**
**ASSIGNMENT**

The Seller hereby assigns its entire right, title and interest as purchaser under this Sale Agreement and each Student Loan Purchase Agreement to the Purchaser as of the date hereof and acknowledges that the Purchaser will assign the same, together with the right, title and interest of the Purchaser hereunder, to the Indenture Trustee under the Indenture.

18.

Generally, the Indenture between NCSLT and the Indenture Trustee (US Bank) referred to in **Exhibit 10** is a legally binding bond or loan document by which two parties agree on a set of conditions and loan terms requiring the borrower to pay the lender a series of principle and

interest payments over time. Here, it would control the bond holders of the NCSLT Trust's

ability to get paid—as well as the investment management by the Indenture's Trustee and is

created at **Exhibit 11** with the Indenture between National Collegiate Student Loan Trust 2007-2

and US Bank National Association:

> INDENTURE dated as of December 1, 2006, between THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4, a Delaware statutory trust (the "Issuer"), and U.S. BANK NATIONAL ASSOCIATION, a national banking association, as trustee and not in its individual capacity (the "Indenture Trustee").

19.

The Granting Clause of the Indenture at **Exhibit 11** confirms the language of the Deposit

and Sale Agreement at the Assignment Clause of Article XII: assigning all *right, title and*

*interest* of the Issuer (NCSLT 2007-2) is granted to the Indenture Trustee or US Bank, NA:

> GRANTING CLAUSE
>
> The Issuer hereby Grants to the Indenture Trustee at the Closing Date with respect to the Financed Student Loans, as trustee for the benefit of the holders of the Notes, all the Issuer's right, title and interest in and to the following:
>
>   (a)  the Financed Student Loans, and all obligations of the Obligors thereunder including all moneys paid thereunder on or after the Cutoff Date;

20.

A "Prospectus" is a formal legal document that is required by and filed with the

Securities and Exchange Commission (SEC) that provides details about an investment offering

for sale to the public. Every document produced here by NCSLT in its discovery, came from the

internet. There is a website addresses attached to the NCSLT documents:

www.sec.gov/edgar/searchedgar/companysearch.html.

21.

The Prospectus for the NCSLT 2006-4 sale was created to attract investors to invest in a

Trust that would then pay National Collegiate Funding, LLC for the bundle of debts it purchased

from the student loan lender, Chase. Here, and right from the beginning, the Prospectus confirms

in 2007 the *eventual* transfer of all the rights to the Indenture Trustee at **Exhibit 12**. There were

15 Trusts to be financed. The Prospectus detailed the assignment to the Indenture Trustee:

**STUDENT LOAN PURCHASE AGREEMENTS**

For each trust, we will acquire the related student loans under student loan purchase agreements with various originators or holders. The student loans will in turn be purchased by the trust from us with proceeds from the sale of the securities. We will assign our rights under the student loan purchase agreements to the trust, which will further assign these rights to the indenture trustee as collateral for the securities.

**DEPOSIT AND SALE AGREEMENTS**

We will sell student loans to the trusts under a deposit and sale agreement. The trusts may purchase student loans that are owned by one or more trusts that were previously formed by The First Marblehead Corporation or an affiliate. The owner trustee will hold legal title to the trust student loans. The trusts will assign their rights under the deposit and sale agreement to the indenture trustee as collateral for the securities.

**Please see Exhibit 12**.

22.

Plaintiffs are being informed and believe, and on that basis allege, that the Defendants

have a policy and practice of filing computer template lawsuits based on false documentation and

algorithm metrics created by TSI like in **Exhibit 1-3**-- *without any meaningful attorney review*

*or involvement* by Defendant attorneys Shermeta and Weltman prior to signing of the lawsuit in

violation of 15 U.S.C. §§ 1692e (3).

23.

Further, the Defendants' written communications in the form attached as **Exhibit 1-3** are

false, deceptive, and misleading in that these communications were neither drafted by, nor received

any meaningful review or involvement from, a licensed attorney prior to filing of the lawsuits in

violation of 15 U.S.C. §§1692e and 1692e (3) and §§1692e (10). **Please see Plaintiff's Affidavits and the Defendant Collection Lawsuits**.

## IV. PARTIES

24.

Defendant TSI is a foreign corporation located in the State of California with a Resident Agent address at 40600 Ann Arbor Road, E Ste. 201, Plymouth, MI 48170. TSI and is a debt collector that services and collects large portfolios of *defaulted student loans* for NCSLT under 15 U.S.C. 1692a (6) and whose "principle purpose" is to collect debts using the mail, public notices and telephone and through Michigan law firms, files collection lawsuits for NCSLT with false and hearsay documents throughout the State of Michigan. **Please see Exhibit 1-3 which the lawsuits are filed in Michigan State District Courts**.

25.

Defendant Shermeta Law Group, PLLC ("Shermeta") is a law firm organized as a Michigan professional corporation with principal offices at 1030 Doris Road, Suite 200, Auburn Hills, MI 48326. Shermeta is a law firm collection agency collecting student loan debt for NCSLT entities and TSI under the FDCPA, RCPA and MOC. The alleged debt being collected by Shermeta is a "debt" as defined by 15 U.S.C. §1692a (5). The alleged student loan debt is a "consumer debt" as defined by the RCPA under MCL 445.251(a). Shermeta is a "collection agency" and/or "licensee" as the terms are defined and used in the MOC.

26.

Weltman, Weinberg and Reis, CO. LPA ("Weltman") are debt collectors under the FDCPA and RCPA and a Michigan Corporation with a Resident Agent address of 2155 Butterfield Dr. Troy, MI 48084.   Weltman's "principle purpose" is to collect debts under the FDCPA as a collection law firm engaged in the business of using the mail, public notices and

telephone to collect consumer debts originally owed to others, including student loan debts for entities such as NCSLT and TSI. Weltman is a "collection agency" and/or "licensee" as the terms are defined and used in the MOC.

27.

The alleged debts being collected by Defendants is a "debt" as defined by 15 U.S.C. §1692a (5). The alleged mortgage debt is a "consumer debt" as defined by the RCPA under MCL 445.251(a). Weltman, TSI and Shermeta are a "collection agency" under the RCPA and MOC.

28.

The FDCPA applies to lawyers regularly engaged in consumer debt-collection litigation. *Heintz v. Jenkins*, 514 U.S. 291 (1995); *Schroyer v. Frankel*, 197 F.3d 1170, 1173-74 (6th Cir. 1999). Defendant Weltman files state court lawsuits for Defendant TSI in seeking to collect a debt that is in default at the time of the filing of the lawsuit on behalf of its clients and therefore is a debt collector. See *Heintz* at 514 U.S. 291, 299 (1995).

29.

Plaintiff Tingey is in the City of Rochester Hills, County of Oakland, State of Michigan and considered a Consumer under the FDCPA and RCPA and MOC. **Exhibit 1 contains the State Collection lawsuit against Ms. Tingey**.

30.

Plaintiff Harris is in the City of Shelby Township, County of Macomb, State of Michigan and considered a Consumer under the FDCPA and RCPA and MOC. **Exhibit 2 contains the lawsuit against Mr. Harris**.

31.

Plaintiff Dudgeon is in the City of Grand Rapids, County of Kent, State of Michigan and considered a Consumer under the FDCPA and RCPA and MOC. **Exhibit 3 contains the State Collection lawsuit against Mr. Dudgeon**.

## V. JURISDICTION AND VENUE

### 32.

Jurisdiction arises under 15 U.S.C. § 1692k (d) and 28 U.S.C. §§ 1331, 1337. This court has jurisdiction over this Complaint pursuant to the FDCPA, 15 U.S.C. § 1692k(d), 28 U.S.C. § 1331 and 28 U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place here. Supplemental jurisdiction for Plaintiff's state law claims arise under 28 U.S.C. § 1367. *Baltierra v. Orlans Associates PC*, No. 15-cv-10008 (E.D. Mich. Oct. 7, 2015).

### 33.

The factual basis of the RCPA claim is the same as the factual basis of the FDCPA claim and this district court has "supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  28 U.S.C. § 1367(a). *Lovelace v. Stephens & Michaels Assocs., Inc.*, No. 07-10956, 2007 WL 3333019, at *2 (E.D. Mich. Nov. 9, 2007) (stating that FDCPA claims and RCPA claims are simply duplicates and "need not be addressed separately").

### 34.

Venue is appropriate in this federal district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred within this federal judicial district, and the Defendants are subject to personal jurisdiction in the State of Michigan at the time

this action is commenced.

## VI. STATUTORY STRUCTURE

## FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

35.

The FDCPA was passed to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuse. 15 U.S.C. § 1692.

36.

Plaintiff is a consumer under the FDCPA. Under the FDCPA, a "consumer" is any natural person obligated or allegedly obligated to pay any debt. 15 U.S.C. §1692a (3).

37.

Under the FDCPA, "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes. 15 U.S.C. § 1692a (5).

38.

Under the FDCPA, a "debt collector" is any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose for which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another. 15 U.S.C. § 1692a (6).

39.

The Defendants regularly attempt to collect consumer debts alleged to be due another (NCSLT) and are debt collectors as provided in 15 U.S.C. 1692a (6). The FDCPA is a strict

liability statute, which provides for actual or statutory damages upon the showing of one violation.

40.

Whether a debt collector's actions are false, deceptive, or misleading under § 1692(a)-g is based on whether the "least sophisticated consumer" would be misled by a defendant's actions. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006).). This standard ensures "that the FDCPA protects all consumers, the gullible as well as the shrewd." *Kistner v. Law Offices of Michael P. Margelefsky, LLC.*, 518 F.3d 433, 438 (6th Cir).

41.

Whether a debt collector's actions are false, deceptive, or misleading under §1692e is based on whether the "least sophisticated consumer" would be misled by defendant's actions. *Wallace v. Washington Mutual Bank*, 683 F.3d. 323, 327 (6th Cir. 2012), *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir.2006). See *Currier v First Resolution Inv. Corp.*, 762 F. 3d 529, 535 (6th Cir. 2014); *Statton v Portfolio Recovery Assocs.*, *LLC*, 770 F.3d 443, 450 (6th Cir. 2014).

42.

Section 1692e provides: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading collection practices and names a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct. 15 U.S.C. § 1692e (1) -(16). Among the *per se* violations prohibited by that section are using any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, 15 U.S.C. § 1692e (10).

43.

Section 1692e further provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(2) The false representation of—
(A) the character, amount, or legal status of any debt; or
(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
(3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.
(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

## REGULATION OF MICHIGAN COLLECTION PRACTICES ACT (RCPA)

44.

The Regulation of Michigan Collection Protection Act (RCPA), MCL 445.251 et seq. is an act to regulate the collection practices of certain persons; to provide for the powers and duties of certain state agencies; and to provide penalties and civil fines.

45.

"Claim" or "debt" means an obligation or alleged obligation for the payment of money or thing of value arising out of an expressed or implied agreement or contract for a purchase made primarily for personal, family, or household purposes.

46.

"Collection agency" means a person directly or indirectly engaged in soliciting a claim for collection or collecting or attempting to collect a claim owed or due or asserted to be owed or due another or repossessing or attempting to repossess a thing of value owed or due or

asserted to be owed or due another person, arising out of an expressed or implied agreement. Collection agency includes a person representing himself or herself as a collection or repossession agency or a person performing the activities of a collection agency, on behalf of another, which activities are regulated by Act No. 299 of the Public Acts of 1980, as amended, being sections 339.101 to 339.2601 of the Michigan Compiled Laws. Collection agency includes a person who furnishes or attempts to furnish a form or a written demand service represented to be a collection or repossession technique, device, or system to be used to collect or repossess claims, if the form contains the name of a person other than the creditor in a manner indicating that a request or demand for payment is being made by a person other than the creditor even though the form directs the debtor to make payment directly to the creditor rather than to the other person whose name appears on the form. Collection agency includes a person who uses a fictitious name or the name of another in the collection or repossession of claims to convey to the debtor that a third person is collecting or repossessing or has been employed to collect or repossess the claim.

47.

Defendants are regulated agencies under the RCPA. See *Misleh* v *Timothy E. Baxter & Associates*, 786 F Supp. 2d 1330(E.D. Mich 2011; *Newman v. Trott & Trott, PC*, 889 F. Supp. 2d 948 - Dist. Court, ED Michigan 2012; *Baker v. Residential Funding Co., LLC*, 886 F. Supp. 2d 591 - Dist. Court, ED Michigan 2012.

48.

"Communicate" means the conveying of information regarding a debt directly or indirectly to a person through any medium. "Consumer" or "debtor" means a natural person obligated or allegedly obligated to pay a debt. "Creditor" or "principal" means a person who offers or extends credit creating a debt or a person to whom a debt is owed or due or asserted to

be owed or due. Creditor or principal does not include a person who receives an assignment or

transfer or a debt solely for the purpose of facilitating collection of the debt for the assignor or

transferor. In those instances, the assignor or transferor of the debt shall continue to be

considered the creditor or the principal for purposes of this act.

49.

"Person" means an individual, sole proprietorship, partnership, association, or

corporation. Defendants are regulated persons under § 445.251(g)(xi). Defendants are violating

the following RCPA subsections:

**445.252 Prohibited acts.**

(a) Communicating with a debtor in a misleading or deceptive manner, such as using the
stationery of an attorney or credit bureau unless the regulated person is an attorney or is a credit
bureau and it is disclosed that it is the collection department of the credit bureau; and

(b) Using forms or instruments which simulate the appearance of judicial process; and

(d) Using forms that may otherwise induce the belief that they have judicial or official sanction.

(e) Making an inaccurate, misleading, untrue, or deceptive statement or claim in a
communication to collect a debt or concealing or not revealing the purpose of a communication
when it is made in connection with collecting a debt; and

(f) Misrepresenting in a communication with a debtor 1 or more of the following:

(i) The legal status of a legal action being taken or threatened.

(ii) The legal rights of the creditor or debtor.

(iii) That the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the
seizure, garnishment, attachment, or sale of the debtor's property; and

(n) Using a harassing, oppressive, or abusive method to collect a debt…

(q) Failing to implement a procedure designed to prevent a violation by an employee.

50.

The Plaintiff seeks Statutory Damages, ACTUAL DAMAGES, INJUNCTIVE RELIEF,

attorney fees, costs, and all other relief, equitable or legal in nature, as deemed appropriate by this Court in a Class Action context, pursuant to the FDCPA, RCPA/MOC and all other common law or statutory regimes. The Plaintiff, on behalf of himself and all others similarly situated requests that he be awarded:

    a.   Actual Damages suffered by the Plaintiff who is subject to a collection/affidavit scheme or plan to burden him into not responding to collection lawsuits,

    b.   Injunctive Relief stopping Defendants from continuing their plan and scheme through debt collection lawsuits as alleged here

    c.   Attorney fees and costs under the FDCPA and RCPA/MOC.

## MICHIGAN OCCUPATIONAL CODE (MOC)

51.

The Michigan Occupational Code (MOC), MCL 339.901 et seq. is an act to regulate the collection practices of certain persons; to provide for the powers and duties of certain state agencies; and to provide penalties and civil fines and requires that collection agencies are licensed in the State of Michigan unless their collection activities are exclusively limited to interstate activities.

52.

"Claim" or "debt" means an obligation or alleged obligation for the payment of money or thing of value arising out of an expressed or implied agreement or contract for a purchase made primarily for personal, family, or household purposes.

53.

"Collection agency" means a person directly or indirectly engaged in soliciting a claim for collection or collecting or attempting to collect a claim owed or due or asserted to be owed

or due another, or repossessing or attempting to repossess a thing of value owed or due or

asserted to be owed or due another person, arising out of an expressed or implied agreement.

Collection agency includes a person representing himself or herself as a collection or

repossession agency or a person performing the activities of a collection agency, on behalf of

another, which activities are regulated by Act No. 299 of the Public Acts of 1980, as amended,

being sections 339.101 to 339.2601 of the Michigan Compiled Laws. Collection agency

includes a person who furnishes or attempts to furnish a form or a written demand service

represented to be a collection or repossession technique, device, or system to be used to collect

or repossess claims, if the form contains the name of a person other than the creditor in a

manner indicating that a request or demand for payment is being made by a person other than

the creditor even though the form directs the debtor to make payment directly to the creditor

rather than to the other person whose name appears on the form. Collection agency includes a

person who uses a fictitious name or the name of another in the collection or repossession of

claims to convey to the debtor that a third person is collecting or repossessing or has been

employed to collect or repossess the claim. Defendants are collection agencies as stated in their

own websites and letters.

54.

"Communicate" means the conveying of information regarding a debt directly or

indirectly to a person through any medium. Defendants are communicating with Michigan

consumers through letters and by lawsuits. See Defendants' own lawsuits against debtors in

Michigan alleging this.

55.

"Consumer" or "debtor" means a natural person obligated or allegedly obligated to pay a

debt. Plaintiff is a consumer under the MOC. "Creditor" or "principal" means a person who

offers or extends credit creating a debt or a person to whom a debt is owed or due or asserted to be owed or due. Creditor or principal does not include a person who receives an assignment or transfer or a debt solely for the purpose of facilitating collection of the debt for the assignor or transferor.

56.

The MOC's reference to "[a]n attorney handling claims and collections on behalf of a client and in the attorney's own name," is better understood as encompassing *both* attorneys who handle claims and collections on behalf of a client *and* attorneys who seek to collect a debt owed to themselves or their firms. *Misleh v. Timothy E. Baxter & Associates*, 786 F. Supp. 2d 1330 - Dist. Court, ED Michigan 2011.

57.

Even if the person, corporation, entity or business such as Defendants is not required to be licensed under MCL 339.901 et seq. the MOC does require Defendant are subject to the "other requirements that regulate collection practices" under MCL 339.904(2).

58.

Defendants are violating the following MOC subsections under MCL 339.915:

**339.915 Licensee; prohibited acts.**

(a) Communicating with a debtor in a misleading or deceptive manner, such as using the stationery of an attorney or the stationery of a credit bureau unless it is disclosed that it is the collection department of the credit bureau.

(b) Using forms or instruments which simulate the appearance of judicial process.

(d) Using forms that may otherwise induce the belief that they have judicial or official sanction.

(e) Making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt or concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt.

(f) Misrepresenting in a communication with a debtor any of the following:

(i) The legal status of a legal action being taken or threatened.

(ii) The legal rights of the creditor or debtor.

(iii) That the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment, or sale of the debtor's property.

(n) Using a harassing, oppressive, or abusive method to collect a debt, including causing a telephone to ring or engaging a person in telephone conversation repeatedly, continuously, or at unusual times or places which are known to be inconvenient to the debtor. All communications shall be made from 8 a.m. to 9 p.m. unless the debtor expressly agrees in writing to communications at another time. All telephone communications made from 9 p.m. to 8 a.m. shall be presumed to be made at an inconvenient time in the absence of facts to the contrary.

(q) Failing to implement a procedure designed to prevent a violation by an employee.

59.

Defendant Shermeta and Defendant Weltman are filing claims for collections, sharing office space and resources in collecting debts from Michigan consumers and identifying themselves as attorneys in communications through "NCSLT" lawsuits and letters for Defendant TSI and are violating the following MOC subsections under MCL 339.915a:

**339.915a**

(a) Listing the name of an attorney in a written or oral communication, collection letter, or publication.

(b) Furnishing legal advice, or otherwise engaging in the practice of law, or representing that the person is competent to do so, or to institute a judicial proceeding on behalf of another.

(c) Sharing quarters or office space, or having a common waiting room with a practicing attorney or a lender.

(d) Employing or retaining an attorney to collect a claim. A licensee may exercise authority on behalf of a creditor to employ the service of an attorney if the creditor has specifically authorized the collection agency in writing to do so and the licensee's course of conduct is at all times consistent with a true relationship of attorney and client between the attorney and the creditor. After referral to an attorney, the creditor shall be the client of the attorney, and the licensee shall not represent the client in court. The licensee may act as an agent of the creditor in dealing with the attorney only if the creditor has specifically authorized the licensee to do so in writing.

(f) Soliciting, purchasing, or receiving an assignment of a claim for the sole purpose of instituting an action on the claim in a court.

60.

The Plaintiff seeks INJUNCTIVE RELIEF AND ACTUAL DAMAGES, attorney fees, costs, and all other relief, equitable or legal in nature, as deemed appropriate by this Court in a Class Action context, pursuant to the MOC and the RCPA and all other common law or statutory regimes. The Plaintiff requests that he be awarded:

    a.  Statutory and Actual Damages,

    b.  Injunctive Relief stopping Defendants from continuing their plan and scheme through letters and debt collection lawsuits as alleged here

    c.  Attorney fees and costs under the MOC and RCPA.

61.

The RCPA mirrors the requirements and remedies of the FDCPA with the same 6th Circuit use of the "least sophisticated consumer" standard. *McKeown v. Mary Jane M. Elliott P.C.,* No. 07–12016–BC, 2007 WL 4326825, at *5 (E.D.Mich. Dec. 10, 2007) (citing *Hubbard v. Nat'l Bond and Collection Assocs., Inc.,* 126 B.R. 422, 426 (D.Del.1991)) held that "§ 445.252(e) applies to Defendant, its analysis is similar to that under § 1692e of the FDCPA, both of which bar misleading and deceptive communications… In light of the similarity between 15 U.S.C. § 1692e 15 U.S.C. § 1692g and these causes of action, it appears appropriate to view Plaintiff's claims under the same "least sophisticated consumer" standard.

## VII. FACTUAL ALLEGATIONS

62.

In *National Collegiate Student Loan Trust 2006-4 v Jessica Tingey, #18-CO1328-GC National Collegiate Student Loan Trust 2007-2 v Jessica Tingey, #18-CO1327-GC National Collegiate Student Loan Trust 2007-4 v Traoney D. Harris, #18-000099-CK and National*

*Collegiate Student Loan Trust 2006-4 v William E. Dudgeon, #18-2511-GC* in courts across Michigan, Defendant Weltman and Shermeta are suing Plaintiffs on behalf of National Collegiate Student Loan Trusts ("NCSLT") without any proof of debt ownership or assignments from NCSLT and TSI. NCSLT is not Real Party in Interest and Choice of Law Provision in the Contract requires the case be litigated in Ohio.

63.

The above lawsuits (*Exhibits 1-3*) and all the lawsuits filed by Defendants are created by a data driven Algorithm generated by TSI that directs the Attorney Network Defendants to file template lawsuits on flimsy proof in an attempt to obtain a default judgment against Michigan citizens like Plaintiffs.

64.

The collection lawsuit that Weltman uses against Michigan residents is some bare bones, computer template that specifically states it has an assignment of ownership attached to it at an Exhibit B that does not exist with Paragraph 6 of its template complaint that the debt was subsequently assigned to Plaintiff from JP Morgan Chase Bank:

6.    Defendant, William E. Dudgeon, executed a Non-Negotiable Credit Agreement in October of 2006  bearing current account number XXXXX9578-001-PHEA, a copy of which is attached hereto as **Exhibit A**, promising to repay a loan made to Defendant by JPMorgan Chase Bank, N.A. which was subsequently assigned to Plaintiff, National Collegiate Student Loan Trust 2006-4 (See attached **Exhibit B**);

65.

The collection lawsuit that Shermeta uses against Michigan residents is some bare bones, computer template that specifically states it has an assignment of ownership attached to it at an Exhibit B that does not exist with Paragraph 4 of its template complaint that the debt was duly

assigned to Plaintiff in the normal course of business with nothing more:

> **4.  The contract was duly assigned, in the normal course of business, to Plaintiff.**

66.

However, there is nothing attached to the lawsuits evidencing any ownership or assignment of the SPECIFIC debts of the State Defendant to NCSLT in the lawsuit by Defendants Shermeta or Weltman (at **Exhibit 1-3**).

67.

Given the lack of evidence of any debt ownership of the SPECIFIC DEBTS that NCSLT are suing upon, there clearly is no review or meaningful involvement of the file by the Shermeta and Weltman Defendants prior to an attorney signing the State Action.

68.

TSI directs Shermeta and Weltman to submit false or deceptive lawsuits to state and local courts in order to obtain default judgments against consumers for phantom debts or debts NCSLT does not have standing to pursue.   In fact, most if not all of the judgments procured by NCSLT are default judgments, as few consumers in similar debt collection cases take the necessary steps via litigation to adequately defend themselves.4

---

4 https://www.ftc.gov/sites/default/files/documents/reports/federal-trade-commission-bureau-consumer-protectionstaff-report-repairing-broken-system-protecting/debtcollectionreport.pdf See, e.g., Abrams, Tr. V at 18 (well over 60%); Buckles, Tr. I at 24 (85%); Domestic Policy Subcommittee Minority Staff Report of the House Oversight and Government Reform Committee (Domestic Policy Minority Staff) Comment, 3-4 (80% in New York City and Massachusetts, citing Urban Justice Center, Debt Weight: The Consumer Credit Crisis in New York City and its Impact on the Working Poor, 1 (Oct. 2007), available at www.urbanjustice.org/cdp); Evans, Tr. V at 19 (70-80%); Fisher, Tr. V at 193 (70%); Groves, Tr. V at 22-3 (80- 90%); Lipman, Tr. I at 21-2 (85-90%); MFY Legal Services (MFY) Comment at 1-2 (90% of New York City debtors fail to answer in suits filed by seven largest debt collection law firms, citing MFY's 2008 report, Justice Disserved: A Preliminary Analysis of the Exceptionally Low Appearance Rate by Defendants in Lawsuits Filed in the Civil Court of the City of New York, available at http://www.mfy.org/Justice_Disserved.pdf); Moiseev, Tr. I at 21 (85-90%); Moore, Tr. IV at 18 (80% based on California Creditors' Bar Association informal survey); Neighborhood Economic Development Advocacy Project (NEDAP) Comment at 2 (75% default rate in New York City and 90% rate of failure to answer collection suit); Redmond, Tr. V at 22 (percentage is "certainly very high"); Surh, Tr. IV at 55 (95%); The Legal Aid Society, Neighborhood Economic Development Advocacy Project, MFY Legal Services, and Urban Justice Center –

69.

Defendants take advantage of the fact that, under most states' civil procedure law, the public employees who oversee the default-judgment process engage in a largely ministerial function, relying upon the representations and certifications of the attorneys who practice before the court. Given that tens of thousands of such lawsuits are filed every year, judicial system personnel would be overwhelmed if they had to investigate the validity of each and every default judgment application.

70.

Here and as is perpetrated throughout the State of Michigan, Defendants have filed a collection claims using form or template lawsuits with no evidence or proof while sometimes attaching "Pool Supplements" (EXHIBIT B of the State Complaints) to create a false belief in consumers and courts that they have the assigned right to collect on Specific debts they are suing upon. **Please see Exhibit 1-3**.

71.

Defendant Attorneys sign off on the lawsuits knowing the Plaintiff NCSLT entity or TSI lack the required assignment and chain of title paperwork necessary to prove they have a right to sue in the state or local court an action is filed in. It is written into every Deposit and Sale Agreement the NCSLT entity is part of.    The NCLST paperwork shows that NCSLT lost any rights it may have had in as a Real Party in interest in the student loan debt in the NCSLT 2006-4 Deposit and Sale Agreement with US Bank, NA in ARTICLE XII at **Exhibit 10**:

---

Community Development Project, Debt Deception: How Debt Buyers Abuse the Legal System to Prey on Lower-Income New Yorkers (May 2010), 8, available at http://www.nedap.org/pressroom/documents/DEBT_DECEPTION_FINAL_WEB.pdf (hereinafter Debt Deception) (finding among 336 collection cases brought by the 26 most litigious debt buyers in New York City that 81% of cases initially resulted in default judgments for the debt buyers); but see also Moore, Tr. IV at 151 (95% of cases that go to judgment are by default)

DEPOSIT AND SALE AGREEMENT
THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4

This DEPOSIT AND SALE AGREEMENT (the "Sale Agreement"), dated as of December 7, 2006, between The National Collegiate Funding LLC, in its capacity as seller (in such capacity, the "Seller"), and The National Collegiate Student Loan Trust 2006-4, as purchaser (the "Purchaser"), shall be effective upon execution by the parties hereto.

WHEREAS, the Seller is the owner of certain student loans; and

WHEREAS, the Seller desires to sell its interest in such student loans and the Purchaser desires to purchase such loans from the Seller.

NOW, THEREFORE, in connection with the mutual promises contained herein, the parties hereto agree as follows:

ARTICLE XII
ASSIGNMENT

The Seller hereby assigns its entire right, title and interest as purchaser under this Sale Agreement and each Student Loan Purchase Agreement to the Purchaser as of the date hereof and acknowledges that the Purchaser will assign the same, together with the right, title and interest of the Purchaser hereunder, to the Indenture Trustee under the Indenture.

72.

An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. See, e.g., *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 404 (3rd Cir. 2000). Courts apply vicarious liability to debt collectors like TSI and Defendant law firms even when the debt collector they hire is an attorney. See, e.g., *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1516 (9th Cir.1994) (holding a debt collector vicariously liable for an attorney's violation of the FDCPA venue provision).

73.

Attached to the State Court Plaintiff's Complaint is a purported four-page document evidencing the terms and condition of the contract that the State Plaintiff is stating the debtor has breached. The terms include a provision "**L. Additional Agreements**" that the "Credit Agreement" was "entered in Ohio" and is governed under both Federal and Ohio law and specifically states:

L. ADDITIONAL AGREEMENTS
1   I understand that you are located in OHIO and that this Credit Agreement will be
entered into in the same state   CONSEQUENTLY, THE PROVISIONS OF THIS
CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS
OF THE STATE OF OHIO, WITHOUT REGARD TO CONFLICT OF LAW RULES

**See Exhibit 13**

74.

Ignoring the Contract Defendants sue state debtors for breaching, Defendants are

bringing claims against Michigan residents on behalf of NCSLT when the Trust (NCSLT) is not

the Real Party in Interest under Federal Rule 17, MCR 2.201(B)(1) and MCR 600.2041.

75.

In the 6th Circuit, a trust generally is not recognized as a separate legal entity with the

capacity to sue or be sued in its own name. See *Coverdell v. MidSouth Farm Equipment Ass'n*,

335 F.2d 9, 12-13 (6th Cir.1964); In Ohio law, the trustee is the legal owner of a trust. *Fred*

*Martin Motor Co. v. LML Technologies, Inc., Case No. 5:07CV2475, 2008 WL 750555*, at *1

(N.D. Ohio March 19, 2008) (citing 91 O. Jur.3d Trusts § 299 (2008)).

76.

Defendant law firms and at the direction of TSI who sends the debt to the law firms

through the Algorithm, are signing off on collection lawsuits in the wrong state, on behalf of a

Trust that cannot be a Real Party interest and with no proof of ownership interest or assignments

showing NCSLT has any right to sue Michigan residents, even in the State of Ohio.

77.

In violation of 15 U.S.C. § 1692e(3) 15 U.S.C. § 1692e(10) there clearly is no

meaningful involvement or file review by Defendant Attorneys in the signing and filing of the

State Collection Lawsuits against Plaintiffs specifically and Michigan residents generally.

78.

Indeed, the Indenture at **Exhibit 11**, the Deposit and Sale agreement at **Exhibit 10**, NCLST's Prospectus at **Exhibit 12**, Weltman' attorney Blog defining Assignments of Debt in Michigan at **Exhibit 8**, the *Bassett Ruling* and the Shermeta and Weltman's lawsuits show that Defendants were never in possession of any documents showing they had the right to sue Michigan residents under the direction of TSI and on behalf of National Collegiate Student Loan Trusts when the lawsuits were signed by the Defendant law firms.

## VIII. CLASS ACTION ALLEGATIONS

79.

Plaintiffs reallege the above pleadings.

80.

Plaintiffs brings this lawsuit as a class action. Plaintiffs tentatively define two classes including all persons in the State of Michigan who, during the one year (FDCPA) and six years (RCPA) and (MOC) prior to the filing of this complaint were the victims of "NCSLT Lawsuits" filed by Defendants in violation of Federal and State law.

81.

The FDCPA Class consists of all persons with a Michigan address that are subject to the Defendants collection lawsuits in violation of § 1692e, § 1692e (10), 1692e (5), § 1692e (2)(A) 1692e (3), § 1692f and §1692d.

82.

The RCPA and MOC Class consists of all persons with a Michigan address that have received Defendant collection lawsuits in violation of § 1692e, § 1692e (10), § 1692e (2)(A), § 1692e (5), § 1692e (9), §1692f, § 1692d, MCL 339.915(a), 339.915(b), 339.915(d), 339.915(e), 339.915(f), 339.915(n), 339.915(q), 339.915a(d) 339.915(f), MCLA 445.252(n), MCLA

445.252(e), MCLA 445.252(b), MCLA 445.252(d), MCLA 445.252(f) and MCLA 445.252(q).

83.

There are questions of law and fact common to each class, which common issues predominate over any issues involving only individual class members. The principal and common issue is whether Defendants' conduct in connection with the collection of a debt violates the FDCPA, MOC and RCPA.

84.

There are no individual questions here. All Michigan class members receive the same or similar "NCSLT, Attorney Network Lawsuits" with false allegations and missing debt assignments and proof that are filed in violation of the FDCPA, MOC and RCPA.

85.

Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs are committed to vigorously litigating this matter. They are greatly annoyed at being the victim of Defendants' illegal practices and wishes to see that the wrong is remedied. To that end, they have retained counsel experienced in litigating the FDCPA, MOC and RCPA, consumer advocacy and class claims. Neither Plaintiffs nor their counsel has any interests which might cause them to not vigorously pursue this claim.

86.

Plaintiff claims are typical of the claims of the classes, which all arise from the same operative facts and are based on the same legal theories out of **Exhibits 1-13.**

87.

A class action is a superior method for the fair and efficient adjudication of this controversy. Most of the consumers who are subject to this practice and policy of Defendant undoubtedly have no knowledge that their rights are being violated by illegal collection

practices. The interest of class members in individually controlling the prosecution of separate claims against Defendants is small because the maximum damages in an individual action are $1,000. Management of this class claim is likely to present significantly fewer difficulties than those presented in many class claims, e.g, for securities fraud.

88.

Certification of each class under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure is appropriate because:

(a)    The questions of law and fact common to the members of each class predominate over any questions affecting an individual member: and

(b)    A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

89.

There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members.   The predominant questions are:

a.   Whether defendants had a practice of using "NCSLT Lawsuits" with no debt ownership proof or debt assignment proof against Michigan residents in violation of the FDCPA without meaningful file or case review by the Network Attorneys.

b.   Whether doing the above violated the FDCPA, MOC and RCPA.

90.

Certification of each class under Rule 23(b)(2) of the Federal Rules of Civil Procedure also is appropriate because Defendants have acted on grounds generally applicable to each class,

thereby making declaratory and injunctive relief appropriate with respect to each class as a whole.

91.

Plaintiffs request certification of a hybrid class action, combining the elements of FRCP 23(b)(3) for monetary damages and FRCP 23(b)(2) for equitable relief.

## IX. CLAIMS FOR RELIEF

### Count 1-Fair Debt Collection Practices Act

92.

Defendants have violated the FDCPA. Defendants' violations of the FDCPA include, but are not necessarily limited to, the following:

a.      Defendants violated 15 U.S.C. 1692e and 1692e (10) by using false, deceptive and misleading representations and means in connection with the collection lawsuits and using the collection methods exemplified by misrepresentations in *Exhibits 1-3* which are material to due process and the response of the consumer who is being; and

b.   Defendants collected on the debt and violated 15 U.S.C. 1692f (1) by designing and furnishing the "Collection Lawsuits" at *Exhibit 1-3* knowing that such a format would be used to create the false belief in the Plaintiffs and Michigan Courts that a lawsuit was supported by a legally recognized and non-hearsay documentation when in fact, such is not the case as stated above; and

c.   Defendants seek to collect on the debt and violated 15 U.S.C. 1692f with no proof, chain of title or transfer, authorization or card holder agreement to collect any amount, interest, fee or any charges in the "NCSLT Lawsuits" (*Exhibit 1-3*); and

d.   Defendants collected on the debt and violated 15 U.S.C. 1692e (5) by designing and

furnishing false and hearsay proof and false evidence of a debt ownership at *Exhibits 1-3* to

falsely accuse, threaten and sue the Plaintiffs without the necessary proof and in violation of both

the FDCPA and applicable Michigan Court Rules; and

e.   The Defendants violated 15 U.S.C. §1692e(2)(A) in falsely representing that a collection

lawsuit and judgment are falsely supported by the "NCLST" Assignments of the SPECIFIC

debtor's debt or collection rights as stated above; and

f.     Defendant TSI and Defendant Attorneys violated 15 U.S.C. 1692e and 15

U.S.C.1692e (3) by approving and verifying false lawsuits where there is no

meaningful involvement by the attorney other than signing something the attorney has

not read or had a meaningful involvement of the specific file as the Plaintiffs as stated above. See

**Exhibit 1-3** computer template lawsuits as proof.

**Wherefore**, Plaintiff seeks judgment against Defendant for:

a.    Statutory and Actual damages for Plaintiff pursuant to 15 U.S.C. 1692k(a)(2)(A) and (B).

**Please see 5-7 regarding damages**; and

b.    Costs and reasonable attorney's fees pursuant to 15 U.S.C. 1692k(a)(3) with a judicial

review; and;

c.    Actual Damages in the form of the required elevated responses, stress, and out of pocket

costs of having to respond to a false debt collection lawsuit under MCL 600.2145); and

d.    Such further relief as the court deems just and proper

### Count 2-Michigan Collection Practices Act

93.

Defendants have violated the RCPA. Defendant's violations of the RCPA include, but are

not necessarily limited to, the following:

a.    Defendants violated MCLA 445.252(n) by using a harassing, oppressive, or abusive

method to collect a debt, using **Exhibits 1-3** as mentioned above;

b.   Defendants violated MCLA 445.252(e) Making an inaccurate, misleading, untrue, or

  deceptive statement or claim in a communication to collect a debt or concealing or not

  revealing the purpose of a communication when it is made in connection with collecting a

  debt at (*Exhibits 1-3); and*

c.   Defendants violated MCLA 445.252(f) Misrepresenting in a communication with a

  debtor 1 or more of the following:

  (i)    The legal status of a legal action being taken or threatened.

  (ii)   The legal rights of the creditor or debtor at (*Exhibit 1-3);*

d.   Defendants violated MCLA 445.252(q) by failing to implement a procedure

  designed to prevent a violation by an employee by continuing to seek unauthorized

  advances not authorized under the mortgage contract of Michigan Consumers for six

  years through forms (*Exhibits 1-3); and*

e.   Defendants violated MCLA 445.252(b) by creating false documents designed to

  simulate the appearance of judicial process or appearance (*Exhibits 1-6)* and

f.   Defendants violated MCLA 445.252(a) by communicating with debtors in a

  deceptive manner (*Exhibit 1-6).*

  **Wherefore**, Plaintiffs seeks judgment against Defendants for:

a.   Statutory damages for Plaintiff in the amount of $50.00, trebled to $150.00 for a willful

  violation, pursuant to M.C.L. 445.257(2);

b.    Equitable, declaratory and injunctive relief pursuant to M.C.L. 445.257(1), including but

  not limited to, a declaration that defendant's debt collection practices violated the RCPA,

  as well as an injunction, enjoining Defendants from using (*Exhibits 1-3)* which violates

  Michigan law; and

c.    Reasonable attorney's fees and court cost pursuant to M.C.L. 445.257(2) with judicial

sanction.

d.    Actual Damages in the form of the required elevated responses, stress, and out of pocket

costs of having to respond to false debt collection lawsuits under MCL 600.2145 *(Exhibit*

*5-7)*.

### Count 3- MOC ALLEGATIONS FOR ACTUAL DAMAGES AND INJUNCTIVE RELIEF

94.

Defendants have violated the MOC and is collecting debts in Michigan without

regulation and a license and has further violated the MOC, but are not necessarily limited to, the

following:

a.    Defendants violated MCL 339.915(n) by using a harassing, oppressive, or abusive

method to collect a debt, using **Exhibit 1-3** as mentioned above;

b.    Defendants violated MCL 339.915(e) Making an inaccurate, misleading, untrue, or

deceptive statement or claim in a communication to collect a debt or concealing or not

revealing the purpose of a communication when it is made about collecting a debt at

**Exhibit 1-3**; and

c.    Defendants have violated MCL 339.915(f) Misrepresenting in a communication with a

debtor 1 or more of the following:

(i)    The legal status of a legal action being taken or threatened.

(ii)    The legal rights of the creditor or debtor at **Exhibit 1-3**; and

d.    Defendants have violated MCL 339.915(d) by using forms that may otherwise induce the

belief that they have judicial or official sanction is involved such as **Exhibit 1-3**; and

e.     Defendants have violated MCL 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee that is not regulated by the MOC as alleged above; and

f.     Defendants have violated MCL 339.915(a) by communicating with a debtor in a misleading or deceptive manner such as the use of **Exhibit 1-3** as alleged above in creating the plan and scheme to sue on debts NCSLT or Defendants have no proof to pursue SPECIFIC to the DEBTOR sued; and

g.     Defendants have violated MCL 339.915a(a) by listing the name of an attorney in a written or oral communication, collection letter, or publication such as **Exhibit 1-3**; and

h.     Defendant law firms have violated MCL 339.915a(b) by furnishing legal advice, or otherwise engaging in the practice of law, or representing that the person is competent to do so, or to institute a judicial proceeding on behalf of another such as **Exhibit 1-3**; and

i.     Defendant law firms have violated MCL 339.915a(c) by sharing quarters or office space, or having a common waiting room with a practicing attorney or a lender (**Exhibit 1-3**); and

j.     Defendants have violated MCL 339.915a(d) by employing or retaining an attorney to collect a claim. **See Exhibits 1-3**; and

k.     Defendants have violated MCL 339.915a(f) by soliciting, purchasing, or receiving an assignment of a claim for the sole purpose of instituting an action on the claim in a court as shown through the scheme and plan above and through **Exhibits 1-3**.

**Wherefore**, Plaintiff seeks judgment and INJUNCTIVE RELIEF against Defendants for:

a.     Actual damages based on the illegal interests and costs Defendants charged of each Plaintiff, pursuant to M.C.L. 339.916(1). Triple Actual damages if the Court finds Defendants' scheme and plan alleged above as willful non-compliance. M.C.L.

339.916(2); and

b.      Equitable, declaratory and injunctive relief pursuant to M.C.L. 339.916(1) to stop the plan and scheme of defendants as alleged above using (**Exhibits 1-3**); and

c.      Reasonable attorney's fees and court cost pursuant to M.C.L.339.916(2) with judicial sanction and Injunctive Relief.

d.      Actual Damages in the form of the required elevated responses, stress and out of pocket costs of having to respond to false debt collection lawsuits from defendants. **Please see Exhibit 5-7**.


## X. JURY TRIAL DEMAND

Plaintiff demands a Trial by Jury on all issues.

Respectfully submitted,

June 24, 2018                         s/Brian P. Parker
                                     BRIAN P. PARKER (P48617)
                                     Attorney for Plaintiff

Bryan Shartle and Justin Homes.